THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR19-0146-JCC |
| Plaintiff, | ORDER |
| v. | |
| MARIE CHRISTINE FANYO-PATCHOU, | |
| Defendant. | |

This matter comes before the Court on Defendant Marie Christine Fanyo-Patchou's motion for review of the detention order of the Honorable Brian A. Tsuchida, United States Magistrate Judge (Dkt. No. 108). Having considered the parties' briefing and the relevant record,[1] the Court finds oral argument unnecessary and hereby GRANTS the motion and REVOKES the detention order (Dkt. No. 70) for the reasons explained herein.

## I. BACKGROUND

From September 2018 until November 2018, Ms. Fanyo-Patchou and two codefendants allegedly conducted a campaign of harassment against John Doe, a gay man from Cameroon who lives in Seattle. (Dkt. No. 1 at 2–6.) As part of that alleged campaign, Ms. Fanyo-Patchou

---

[1] The Court GRANTS the Government's motion to file Exhibit H (Dkt. No. 124). The Court will consider Exhibit H as part of the record. The Court also GRANTS Ms. Fanyo-Patchou's motion to file an overlength motion (Dkt. No. 107). The Court will consider the entire motion in making its decision.

purportedly disseminated information about John Doe's sexual orientation—including nude images of John Doe and his husband—to the Cameroonian community. (*See id.* at 3–6.)

On November 14, 2018, the Federal Bureau of Investigations interviewed Ms. Fanyo-Patchou "regarding her [potential] involvement in a hate crime and subsequent internet stalking." (*See* Dkt. No. 110-5 at 2.) The interviewing agents advised Ms. Fanyo-Patchou about the nature of the interview and began to ask her about her relationship with John Doe. (*See id.* at 3.) It appears, however, that Ms. Fanyo-Patchou ended the interview quickly after the interviewing agents pressed her about her claim that she did not learn that John Doe was gay until she arrived in the United States. (*See id.*)

On August 1, 2019, a federal grand jury indicted Ms. Fanyo-Patchou and her two codefendants on charges of cyberstalking in violation of 18 U.S.C. § 2261A(2)(A)–(B) and conspiracy to commit cyberstalking in violation of 18 U.S.C. § 371. (Dkt. No. 1 at 2–6.) Five days later, Ms. Fanyo-Patchou was arrested in Washington, D.C., and brought before a magistrate judge in the District of Maryland. (Dkt. No. 108-1 at 2.) The judge ordered Ms. Fanyo-Patchou detained and remanded to the custody of the marshals for transport to Seattle. (*Id.* at 41.) Upon Ms. Fanyo-Patchou's arrival in Seattle, the Government moved to have her detained pending trial. (Dkt. No. 51.) Pretrial Services disagreed with the Government's position and recommended release to Maryland subject to special conditions. (Dkt. No. 55 at 3–4.)

Judge Tsuchida held a hearing on the Government's motion on September 5, 2019. (Dkt. No. 108-4.) At the hearing, Judge Tsuchida expressed his desire to explore options for having Ms. Fanyo-Patchou released locally. (*Id.* at 24.) He therefore set a hearing for September 11, 2019, to discuss those options. (*Id.* at 27–28.) Over the next six days, Pretrial Services explored the possibility of Ms. Fanyo-Patchou being released locally. (*See* Dkt. No. 68 at 2–3.) Pretrial Services concluded that it would "consider release" if Ms. Fanyo-Patchou secured an appropriate release address in Seattle. (*See id.* at 3.) However, Ms. Fanyo-Patchou was unable to secure such an address by the time of the September 11 hearing. (Dkt. No. 108-7 at 3–4.) Consequently,

Judge Tsuchida stated orally that he would order her detained "without prejudice," allowing Ms. Fanyo-Patchou to revisit the issue if she later secured a lease on an apartment. (*See* Dkt. No. 108-7 at 4–9.)

Following the September 11 hearing and detention order, Jake Epps, Ms. Fanyo-Patchou's boyfriend and the father of her unborn child, secured for her a lease on an apartment in Seattle. (*See* Dkt. No. 110-4 at 4.) Ms. Fanyo-Patchou then moved for Judge Tsuchida to reconsider his detention order. (Dkt. No. 80.) But even though Ms. Fanyo-Patchou now had a place to stay in Seattle, Judge Tsuchida denied Ms. Fanyo-Patchou's motion. (*See* Dkt. No. 83.) Judge Tsuchida concluded that due to her weak ties to the community and the seriousness of her alleged offense, she posed a serious risk of flight and a danger to the community. (*See id.* at 1–2.)

## II. DISCUSSION

"Only in rare circumstances should [pretrial] release be denied." *United States v. Motamedi*, 767 F.2d 1403, 1404 (9th Cir. 1985). These words reflect the essential principle that "[i]n our society liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). That exception is to be invoked "only for the strongest of reasons." *Sellers v. United States*, 89 S. Ct. 36, 38 (1969) (Black, J., in chambers). Those reasons are not present in this case.

### A. Standard of Review

When a magistrate judge initially orders a defendant detained pending trial, the district court reviews the magistrate judge's decision *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). In this context, *de novo* means that "the district court should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct with no deference." *Id.* The district court may also consider new evidence offered by the parties. *Id.*

### B. Eligibility for a Detention Hearing

As a threshold matter, the Court must determine if Ms. Fanyo-Patchou is eligible for a

pretrial detention hearing. A defendant is eligible for a detention hearing only if their case falls into one of the categories listed in 18 U.S.C. § 3142(f). *See United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003). "[T]he requisite [categories] for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." *United States v. LaLonde*, 246 F. Supp. 2d 873, 875 (S.D. Ohio 2003) (quoting S. Rep. No. 98-225, at 20 (1984)). Accordingly, unless the Government can show by a preponderance of the evidence that a case falls into one of those categories, the defendant cannot be detained. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1124 (N.D. Iowa 2018).

Here, the Government argues that Ms. Fanyo-Patchou is eligible for a detention hearing because (1) there is a serious risk that she will obstruct justice, *see* § 3142(f)(2)(B); (Dkt No. 113 at 9); (2) there is a serious risk that she will flee, *see* § 3142(f)(2)(A); (Dkt. No. 113 at 8); and (3) cyberstalking is a "crime of violence," *see* §§ 3142(f)(1)(A), 3156(a)(4)(B); (Dkt No. 113 at 8 n.9). The Court finds that the Government has failed to establish a serious risk of obstruction but has established a serious risk of flight. Consequently, Ms. Fanyo-Patchou is eligible for a detention hearing, and it is unnecessary for the Court to decide if the term "crime of violence" as used in 18 U.S.C. §§ 3142(f)(1)(A) and 3156(a)(4)(B) is void for vagueness.

1. Risk of Obstruction

The risk that Ms. Fanyo-Patchou will obstruct justice is speculative. The Government claims that Ms. Fanyo-Patchou might threaten or intimidate John Doe because as part of the alleged conspiracy, she purportedly disseminated materials that she "knew would result in a serious threat to John Doe and his family's physical safety." (*See* Dkt. No. 113 at 9.) However, the acts alleged in the indictment all occurred in 2018. Since then, Ms. Fanyo-Patchou has not tried to threaten, intimidate, or even contact John Doe. (*See* Dkt. No. 108 at 5.) In fact, the Government presents no evidence at all that Ms. Fanyo-Patchou will obstruct justice beyond the allegations in the indictment. (*See* Dkt. No. 113 at 9.) Those allegations do not establish a

"serious risk" of obstruction.

## 2. Risk of Flight

While there is not a serious risk that Ms. Fanyo-Patchou will obstruct justice, there is a serious risk that she might flee. Ms. Fanyo-Patchou lacks strong ties to the United States[2] that would give her an incentive to stay. She is not authorized to work in the United States. (*See* Dkt. No. 113 at 11.) She has no family or friends here besides Mr. Epps. (*See* Dkt. Nos. 108-1 at 30.) The information the Court has about Mr. Epps is limited. (*See generally* Dkt. No. 108-3). And Ms. Fanyo-Patchou has previously given inconsistent statements about her ties to the United States. (*See* Dkt. No. 108-1 at 30.) Furthermore, Ms. Fanyo-Patchou has connections in Cameroon, which she could call on if she chose to flee. (*See id.* at 31.)

Despite these risk factors, the issue of Ms. Fanyo-Patchou's flight risk is a close one. In November 2018, she was interviewed by the FBI "regarding her [potential] involvement in a hate crime and subsequent internet stalking." (*See* Dkt. No. 110-5 at 2.) The FBI "advised [her] of . . . the nature of the interview" and asked her questions about her relationship with John Doe. (*See id.*) At this point, Ms. Fanyo-Patchou was put on notice that she might ultimately be charged with a serious crime. But she did not flee from those charges. Instead, she applied for asylum, started a relationship with Mr. Epps, and became pregnant with a child that they intend to raise together. (*See* Dkt. Nos. 108-3, 110-4.) These actions show that Ms. Fanyo-Patchou may indeed be committed to staying in the United States. But while she may be committed to staying, the Court nevertheless concludes that the risk that she could flee renders her eligible for a detention hearing.

**B.     Eligibility for Detention**

---

[2] The Government emphasizes Ms. Fanyo-Patchou's lack of connections to this district. (*See* Dkt. No. 113 at 8.) However, Ms. Fanyo-Patchou's ties to this district are not what matters. What matters are her ties to the United States as a whole. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990) ("If the defendant is a United States resident, the community to be considered must be at least as broad as in the United States.").

If a defendant is eligible for a detention hearing, then the court must determine if a "condition or combination of conditions will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community." *See* § 3142(f). In making that determination, the court must consider (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against [the defendant]"; (3) "the history and characteristics of [the defendant]"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." *See* § 3142(g). The court must weigh those factors while keeping in mind that "doubts regarding the propriety of release be resolved in favor of the defendant." *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (citing *Motamedi*, 767 F.2d at 1405–06). The principle that doubts be resolved in the defendant's favor is reflected in the burden of proof: there must be clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, *see* § 3124(f)(2)(B), and there must be a "clear preponderance" of the evidence that no condition or combination of conditions will reasonably assure the defendant's appearance, *see Lopez-Valenzuela v. County of Maricopa*, 719 F.3d 1054, 1065 (9th Cir. 2013).

Here, a careful consideration of the factors listed in § 3142(g) leads the Court to conclude that there are conditions that would reasonably assure Ms. Fanyo-Patchou's appearance and the safety of both John Doe and the community.

          1.    <u>Nature and Circumstances of the Offense</u>

In revoking the detention order of Ms. Fanyo-Patchou's codefendant Christian Fredy Djoko, the Court concluded that the nature and circumstances of his offense favored detention. (*See* Dkt. No. 84 at 9.) The same conclusion is true here—to an extent. Like Mr. Djoko, Ms. Fanyo-Patchou is charged with outing John Doe's sexual identity with the intent to cause John Doe reasonable fear of serious bodily injury. (Dkt. No. 1 at 2–6.) These charges are serious and, if true, show a disregard for John Doe's humanity and safety. But unlike Mr. Djoko, Ms. Fanyo-Patchou is not accused of committing physical acts of violence toward John Doe. (*See* Dkt. No. 1

at 2–6.) Consequently, the accusations against Ms. Fanyo-Patchou do not relate as strongly to the danger that she poses to the community. And those accusations do not at all bear on the risk that she will flee.

### 2. Weight of the Evidence.

The Court previously concluded that the evidence of the alleged campaign of harassment is relatively strong. (*See* Dkt. No. 89 at 10.) The new evidence proffered by Ms. Fanyo-Patchou does not seriously undercut the evidence that she engaged in a cyberstalking campaign. (*See* Dkt. No. 108 at 5–15.) However, at this stage of the case, the Court must consider the weight of the evidence "only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or the community." *Motamedi*, 767 F.2d at 1408. The weight of the evidence is, therefore, the least important factor. *Id.*

### 3. History and Characteristics of Ms. Fanyo-Patchou

As previously discussed, Ms. Fanyo-Patchou's history and characteristics show that there is a serious risk that she will flee. *See supra* Section II.B.2. But those characteristics are also mixed. While Ms. Fanyo-Patchou lacks strong ties to the United States, she does appear to be building ties here. Ms. Fanyo-Patchou is, for example, about to start a family with Mr. Epps, and she has applied for asylum. (*See* Dkt. Nos. 108-3, 110-4.) Those ties give Ms. Fanyo-Patchou an incentive to stay in the United States.

### 4. Nature and Seriousness of the Danger to Any Person

Ms. Fanyo-Patchou does not pose a serious danger to anyone. Although she purportedly committed intimidating acts of cyberstalking, the Government does not allege that she engaged in physical acts of violence. (*See* Dkt. No. 1 at 2–6.) In addition, there is no indication that Ms. Fanyo-Patchou has so much as contacted John Doe since 2018. (*See* Dkt. No. 108 at 5.)

### 5. Release Conditions

In light of the above factors, the Court readily concludes that there are conditions that would reasonably assure Ms. Fanyo-Patchou's appearance and the community's safety. In

September, Pretrial Services recommended release with conditions. (*See* Dkt. No. 55 at 4.) Ms. Fanyo-Patchou has agreed to abide by those conditions and has suggested others that would further secure her presence at trial. (*See* Dkt. No. 108 at 3, 34.) Taken together, the conditions proposed by Pretrial Services and Ms. Fanyo-Patchou are as follows:

- Ms. Fanyo-Patchou must abide by a curfew that allows her to leave Mr. Epp's apartment in Seattle only for preapproved and scheduled activities.
- Ms. Fanyo-Patchou must maintain her residence as directed. She must not change her residence without the prior approval of Pretrial Services or as directed by Pretrial Services.
- Ms. Fanyo-Patchou must participate in the location monitoring program with Active Global Positioning Satellite technology. She must abide by all program requirements, and she must contribute toward the costs of the services, to the extent financially able, as determined by the location monitoring specialist.
- Ms. Fanyo-Patchou must surrender all current and expired passports and travel documents to the Court. She must not apply for or obtain a new passport or travel document from any country without permission of the Court.
- Ms. Fanyo-Patchou must not have direct or indirect contact with John Doe or any other alleged victims.
- Ms. Fanyo-Patchou must not have direct or indirect contact with her codefendants.
- Ms. Fanyo-Patchou must not have direct or indirect contact with any existing or future witnesses.
- Ms. Fanyo-Patchou shall not use, possess, or have access to a computer or computer components (functional or non-functional), including but not limited to hard drives, external storage devices, keyboards, and mice, at her residence, place of employment, private homes, libraries, schools, or other public locations,

|   | without prior approval of Pretrial Services. In addition, Ms. Fanyo-Patchou shall |
|---|---|
| 1 | |
| 2 | not use, possess, or have access to PDA's, gaming systems, and internet-enabled |
| 3 | TV devices, nor access the internet through use of a cellular phone device. Ms. |
| 4 | Fanyo-Patchou shall not access the internet or private or public computer |
| 5 | networks, or have others do so on her behalf, without prior approval of Pretrial |
| 6 | Services. Ms. Fanyo-Patchou must consent to Pretrial Services' use of electronic |
| 7 | detection devices to evaluate her access to WiFi (wireless fidelity) connections. |

These conditions would make it incredibly difficult for Ms. Fanyo-Patchou to flee. They would also make it difficult for her to engage in the type of internet-based harassment of which she is accused. The Court is, therefore, reasonably assured that Ms. Fanyo-Patchou will appear at trial and will not pose a danger to the community if she is released subject to these conditions. *See United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

    **C.**     **Motions to Seal**

In the course of the briefing about Ms. Fanyo-Patchou's motion for review of Judge Tsuchida's detention order, the parties have filed several motions to seal certain exhibits. (*See* Dkt. Nos. 109, 114, 118, 124.) "[T]here is a strong presumption of public access to [the Court's] files." W.D. Wash. Local Civ. R. 5(g)(3). The presumption of public access may be overcome if the Court finds a compelling reason to seal and articulates a factual basis for its decision. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). The Court previously entered the parties' stipulated protective order, which protects confidential information concerning John Doe and witnesses. (*See* Dkt. No. 65 at 1–4.) Having reviewed the exhibits, the Court agrees that the exhibits contain discovery that falls within the scope of the protective order. The exhibits also contain other highly sensitive and personal information that, if made public in this context, could cause irreparable harm to potential witnesses and other persons. Thus, a compelling reason to seal exists that overcomes the presumption of public access to the exhibits. *See Kamakana*, 447 F.3d at 1178–79. The Court therefore GRANTS the

parties' motions to seal (Dkt. Nos. 109, 114, 118, 124).

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Ms. Fanyo-Patchou's motion to file an overlength motion (Dkt. No. 107), GRANTS the Government's motion for leave to file Exhibit H (Dkt. No. 124), GRANTS Ms. Fanyo-Patchou's motion for review of Judge Tsuchida's detention order (Dkt. No. 108), REVOKES Judge Tsuchida's detention order (Dkt. No. 70), and ORDERS that Ms. Fanyo-Patchou be released on an appearance bond, subject to the conditions listed above. The Court also GRANTS the parties' motions to seal (Dkt. Nos. 109, 114, 118, 124) and DIRECTS the Clerk to maintain Docket Numbers 110, 115, 116, and 119 under seal until further order of the Court.

DATED this 12th day of December 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE