THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>MARIE CHRISTINE FANYO-PATCHOU,<br><br>                    Defendant. | CASE NO. CR19-0146-JCC<br><br>ORDER |

  This matter comes before the Court on Defendant Marie Christine Fanyo-Patchou's motion to quash a subpoena and to suppress or strike an exhibit (Dkt. No. 121) and motions to seal (Dkt. Nos. 120, 125). Having considered the parties' briefing and the relevant record, the Court DENIES the motions for the reasons explained herein.

I.  **BACKGROUND**

  On November 12, 2019, Ms. Fanyo-Patchou filed a motion for review of her detention order, (Dkt. No. 108), which the Court ultimately granted, (Dkt. No. 127). In her motion, Ms. Fanyo-Patchou noted that she had lost weight while in prison, that she was four months pregnant, and that she had to undergo routine checkups relating to her pregnancy while in shackles. (*See* Dkt. No. 108 at 2.) "Having [to] give birth while in a federal detention center," Ms. Fanyo-Patchou argued, "is shocking to the conscience and really the type of punitive penalty that should never be visited upon any mother." (*Id.* at 33–34.)

The Government responded to Ms. Fanyo-Patchou's argument by serving the Bureau of Prisons ("BOP") with a subpoena requiring the BOP to provide the Government with records about the medical care that Ms. Fanyo-Patchou had received while being detained pretrial. (*See* Dkt. No. 122 at 2.) The Government then filed Ms. Fanyo-Patchou's medical records as Exhibit H of its response to her motion for review of her detention order. (*See generally* Dkt. No. 116-1.) Ms. Fanyo-Patchou now moves to quash the subpoena served on the BOP, to suppress or strike Exhibit H, and for a protective order preventing further dissemination of her medical records. (Dkt. No. 121 at 1.) Ms. Fanyo-Patchou also moves to seal the motion, her reply, and a copy of the subpoena. (*See* Dkt. Nos. 120 at 1, 125 at 1.)

## II.   DISCUSSION

### A.   Validity of the Government's Subpoena

The Government argues that it properly obtained the BOP's records using a subpoena issued pursuant to Federal Rule of Criminal Procedure 17(c). (*See* Dkt. No. 123 at 7–10.) Ms. Fanyo-Patchou argues that the subpoena was invalid for the following reasons: (1) the Government needed obtain a search warrant for the BOP's records; (2) the Privacy Act, 5 U.S.C. § 555a, prohibited the BOP from disclosing its records to the Government without Ms. Fanyo-Patchou's consent; and (3) the Government did not comply with Rule 17(c). (*See* Dkt. No. 121 at 4–12.) The Court concludes that the Government properly obtained the BOP's records.

#### 1.   The Fourth Amendment

Ms. Fanyo-Patchou argues that the Fourth Amendment required the Government to obtain a search warrant before accessing the Bureau of Prison's records of her medical care. (*See id.* at 11.) The Bureau of Prisons is a government agency. Thus, Ms. Fanyo-Patchou is arguing that the Fourth Amendment required the Government to obtain a warrant to access its own records about the medical care that the Government was providing someone while they were in prison.

This argument appears to be without precedent. The Court cannot find a single case

where a court held that the Government needed to obtain a warrant prior to searching its own records. And for good reason. The Fourth Amendment gives people "[t]he right . . . to be secure in *their* persons, houses, papers, and effects from unreasonable searches and seizures." U.S. Const. amend. IV (emphasis added). The Government's records are not a private citizen's "person," "house," "paper," or "effect." They are the Government's records. Moreover, the Government's records are not a "private sphere" because a person cannot reasonably expect records that are known to and owned by the Government to be free from official intrusion. *Cf. Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) (defining a "search" as "official intrusion into [a] private sphere"). Accordingly, the Government may search its own records without first obtaining a warrant.

## 2. The Privacy Act

Ms. Fanyo-Patchou claims that the BOP violated the Privacy Act when it did not obtain her written consent before disclosing the records of her treatment in response to the Government's subpoena. (*See* Dkt No. 123 at 6–8.) The Government argues that the Privacy Act permitted the disclosure because the act does not require an agency to obtain an individual's consent if the agency discloses the individual's records "pursuant to an order of a court of competent jurisdiction."[1] (*See id.* at 5–6.) According to the Government, an "order of a court" includes a subpoena issued by a party to a case. (*See id.*)

To determine the meaning of a statutory term, a court must first look to the statute's text. *See King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). "If the statutory language is plain, [a court] must enforce it according to its terms." *Id.* (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). When Congress uses a term with a "fixed legal or judicially settled meaning," a court must presume that Congress intended for the term to have that meaning

---

[1] The Government also argues that the Privacy Act is inapplicable. (*See* Dkt. No. 123 at 3.) The Court does not reach this argument because it concludes that even if the Privacy Act applies, neither the BOP nor the Government violated the act.

"unless the statute plainly indicates otherwise." *Huffman v. Comm'r of Internal Revenue*, 978 F.2d 1139, 1145 (9th Cir. 1992).

Here, the term "order of a court" has a "fixed legal or judicially settled meaning" that includes a subpoena issued by a party to a case. *See, e.g.*, *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010) ("[W]e reject BCI's argument that a subpoena issued . . . by an attorney as an officer of the court is not itself a court order . . . ."); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n.5 (9th Cir. 1993) ("[A] subpoena duces tecum is itself a court order . . . ."); *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340 (8th Cir. 1975) ("A subpoena is a lawfully issued mandate of the court issued by the clerk thereof."); *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 821 (1987) (Scalia, J., concurring in judgment) (referring to a court's power "to prosecute for contempt those who . . . disobey orders necessary to the conduct of [its] business (such as subpoenas).") Nothing in text of the Privacy Act "plainly indicates" that Congress intended to define "order of a court" differently than how courts have defined it for decades. The Court therefore concludes that a subpoena issued by a party is an "order of a court" for the purpose of the Privacy Act. Accordingly, the Privacy Act did not require the BOP to obtain Ms. Fanyo-Patchou's consent before the BOP responded to the Government's subpoena.[2]

### 4.   Rule 17(c)

Having concluded that the Government did not violate the Fourth Amendment or the Privacy Act, the Court turns to whether the Government violated Rule 17(c) when it subpoenaed Ms. Fanyo-Patchou's medical records. Rule 17(c) reads as follows:

---

[2] The Court respectfully declines to follow *Doe v. DiGenova*, 779 F.2d 74 (D.C. Cir. 1985), which failed to appreciate the distinction between grand jury subpoenas and subpoenas issued by parties. While some circuit courts consider grand jury subpoenas to be "instrumentalities of the . . . executive branch" rather than court orders, *see, e.g.*, *In ren Gren*, 633 F.2d 825, 827 (9th Cir. 1980) (quoting *In re Grand Jury Proceedings*, 486 F.2d 85, 89–90 (3d Cir. 1973)), those same circuit courts hold that a subpoena issued by a party is a court order, *see Penwalt Corp.*, 708 F.2d at 494 n.5. The Court must presume that Congress was aware of this distinction when it enacted the Privacy Act "unless the statute plainly indicates otherwise." *Huffman*, 978 F.2d at 1145. The Privacy Act does not.

ORDER
CR19-0146-JCC
PAGE - 4

**(c) Producing Documents and Objects.**

> **(1)** ***In General.*** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.
>
> **(2)** ***Quashing or Modifying the Subpoena.*** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.
>
> **(3)** ***Subpoena for Personal or Confidential Information About a Victim.*** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Ms. Fanyo-Patchou argues that the Government violated Rule 17(c) in three respects.

First, Ms. Fanyo-Patchou claims that Rule 17(c) "does not authorize subpoenas requiring a witness to produce the designated items directly to one party." (Dkt. No. 121 at 9.) But the text of Rule 17(c) does not contain any such limit, and Rule 17(c)'s permissive language suggests a court has discretion to decide how a witness should produce the items designated by a subpoena. *See* Fed. R. Crim. P. 17(c)(1) ("The court *may* direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.") (emphasis added); *United States v. Nixon*, 418 U.S. 683, 701–02 (1974) (stating that "enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court" and that "an appellate court will not ordinarily disturb a finding that the applicant for a subpoena complied with Rule 17(c)"). The Court, in its discretion, finds that it was appropriate for the BOP give the Government its records.

Second, Ms. Fanyo-Patchou argues that Rule 17(c) "does not authorize subpoenas requiring a witness . . . to produce . . . materials at some time or place other than the trial or evidentiary hearing in court." (Dkt. No. 121 at 9.) Again, nothing in Rule 17(c), other than

perhaps the word "witness," suggests such a limit. And courts have concluded that Rule 17(c) subpoenas are appropriate to help resolve pre- and post-trial motions. *See United States v. Winner*, 641 F.2d 825, 833 (10th Cir. 1981); *United States v. Charamella*, 294 F. Supp. 280, 282 (D. Del. 1968); *see also* 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 272 (4th ed. 2020). The Court agrees with those courts and concludes that Rule 17(c) allowed the Government to seek records for use in a pre-trial motion that did not involve an evidentiary hearing.

Third, Ms. Fanyo-Patchou argues that Rule 17(c)(3) is unconstitutional unless its procedural protections apply to both the subpoena of a victim's confidential information and the subpoena of a defendant's confidential information. (Dkt. No. 121 at 9.) But an alleged victim of a crime and a criminal defendant are not similarly situated. The latter is charged with violating the law; the former is not. The latter is a party to the proceedings; the former is not. Given the differences between an alleged victim and a criminal defendant, the Federal Rules of Criminal Procedure need not treat the two identically, and it is appropriate for those rules to afford alleged victims modest procedural protections to ensure their privacy. *See* Wright *et al.*, *supra*, § 275 ("The rationale for prior judicial approval is that third parties who receive subpoenas for information about victims do not have the same incentive to challenge it, and the victim may be unaware of the subpoena for his personal or confidential information.")

The Court's conclusion is in no way undermined by *United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. 2006). In *Bahamonde*, the Ninth Circuit addressed a Department of Homeland Security regulation that required defendants who wished to introduce "official information" into evidence to first "set forth in writing, and with as much specificity as possible, the nature of the official information sought." *Id.* at 1128 (quoting 6 C.F.R. § 5.45(a)). The Ninth Circuit concluded that the regulation created an impermissible "imbalance in discovery rights" because the discovery rules did not similarly require the Government to specify the nature of testimony or other evidence that it intended to use to rebut the defendant's evidence. *See id.* at

1  1128–29 (citing *Wardius v. Oregon*, 412 U.S. 470 (1973)). Rule 17(c)(3), by contrast, does not

2  create an "imbalance in discovery rights": it applies equally to subpoenas issued by the

3  Government and by a defendant. Furthermore, to the extent that Rule 17(c)(3) creates a practical

4  imbalance because defendants are more likely than the Government to subpoena alleged victims,

5  that imbalance is justified by the differences between an alleged victim and a criminal defendant.

6  *See Bahamonde*, 445 F.3d at 1229–30 (quoting *Wardius*, 412 U.S. at 475 & n.5) (noting that an

7  imbalance in discovery may be justified by a "strong showing of state interests").

8       In sum, the Court finds that the Government complied with Rule 17(c) when it issued a

9  subpoena on the BOP requiring the BOP to deliver records to the Government relating to the

10  medical care that the BOP had provided to Ms. Fanyo-Patchou.

11       **B.   Motions to Seal**

12       The Court previously sealed the exhibit containing the BOP's records of the treatment

13  that it provided Ms. Fanyo-Patchou. (Dkt No. 127 at 9–10.) Ms. Fanyo-Patchou now asks the

14  Court to seal her instant motion, her reply, and a copy of the subpoena issued on the BOP. (*See*

15  *generally* Dkt. Nos. 120, 125.)

16       The Court starts from the position that "[t]here is a strong presumption of public access to

17  [its] files." W.D. Wash. Local Civ. R. 5(g)(3); *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S.

18  589, 597 (1978). To overcome that presumption, Ms. Fanyo-Patchou must show that there are

19  "compelling reasons" to seal each document. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809

20  F.3d 1092, 1101 (9th Cir. 2016) (holding that the "compelling reasons" standard applies to any

21  motion that "is more than tangentially related to the merits of a case").

22       Ms. Fanyo-Patchou argues that there are compelling reasons to seal her instant motion,

23  her reply, and a copy of the subpoena because those documents discuss the nature the BOP's

24  records. (*See* Dkt. No. 125 at 1.) But the discussion of those records is highly abstract, and Ms.

25  Fanyo-Patchou's interest in keeping that discussion sealed is outweighed by the public's interest

26  in knowing the arguments that both parties made while litigating Ms. Fanyo-Patchou's motion.

ORDER
CR19-0146-JCC
PAGE - 7

Accordingly, the Court DENIES Ms. Fanyo-Patchou's motions to seal (Dkt. No. 120, 125) and

DIRECTS the Clerk to unseal Docket Numbers 121, 122, and 126.

### C.    Motions for a Protective Order

While both sides agree that some form of protective order is necessary, the parties have

not presented language for an order that they both agree upon. (*See* Dkt. Nos. 121 at 12, 123 at

9.) The Court hereby ORDERS the parties to file a stipulated protective order that conforms with

this order and with the Court's most recently issued amended protective order.

## III.    CONCLUSION

For the foregoing reasons, the Court DENIES Ms. Fanyo-Patchou's motion to quash a

subpoena and to suppress or strike an exhibit (Dkt. No. 121), DENIES Ms. Fanyo-Patchou's

motions to seal (Dkt. Nos. 120, 125), and DIRECTS the Clerk to unseal Docket Numbers 121,

122, and 126. The Court further ORDERS the parties to file a stipulated protective order in

accordance with this order.

DATED this 27th day of August 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE